### EUGENE OLIVER V. STATE

No. 26,949.   April 21, 1954
Rehearing Granted June 2, 1954

A. F. Jack Nossaman, Sherman, for appellant.

Wesley Dice, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, 5 years.

From the testimony of Harvey Holland, Alice Faye Emerson and Roberta Holland we learn that they, together with deceased, had attended a Negro picnic and dance; that on the way home, after they passed through the city of Bells, on the road to Whitewright an automobile containing two white men pulled up beside deceased's automobile, and a shot was fired; that the deceased brought his automobile to a halt, and the white man's car stopped behind it; that one of the white men said, "Why in the Hell didn't you stop?"; and that the deceased walked to the back of his automobile, where he was shot and killed.

Each of the witnesses denied that they had stopped as they passed through the city of Bells, and none of them identified the appellant as being present at the homicide. They stated that after the shooting one white man remained at the scene, saying that he had killed the wrong man; and the other man left in their automobile, going in the direction of Bells.

Mr. Ferguson testified that he was in charge of a filling station in the city of Bells on the night in question; that while he was busy servicing some customers another automobile containing some Negroes came in the station and asked to borrow an oil spout and that when he refused to stop his work and furnish one to them the Negro drove away, cursing the witness as he left. Mr. Ferguson stated that when he finished what he was doing he went inside the filling station and reported the incident to Moody Puckett and the appellant. The witness stated that the appellant said, "We'll go get him," and Puckett said, "All right, I am with you"; that the two of them came out of the station, said that the Negroes had gone in the direction of Whitewright and left in appellant's automobile in that direction, Mr. Ferguson testified that sometime later the appellant returned to his station alone and reported to him that they had had trouble with the Negro and that Moody had killed him. The witness stated that he called the sheriff and then went with the appellant to a point on the Whiteright road, where he found a Negro lying on the ground and Puckett sitting on the ground holding a pistol which he recognized as appellant's.

Deputy Sheriff Shivers testified that when he arrived at the scene of the homicide on the night in question he found the body of the deceased with a bullet hole in the forehead. He stated that Puckett was squatting on the side of the road with a pistol containing two empty cartridges lying in his lap and that he arrested

Puckett and the appellant. Shivers stated that he observed a bruise on Puckett's shoulder, that his shirt was torn in one place and had some blood on it.

Officer Fields testified that earlier in the evening prior to the homicide he had had occasion to instruct the appellant and a companion to leave a certain picnic ground because of their drinking. He stated that he arrived at the scene of the homicide, asked Puckett if he was the "guy who done the shooting" and that Puckett replied that he was.

The appellant did not testify or offer any witnesses in his behalf. We think the record authorizes the conclusion that the deceased and his party were not the ones who had caused the disturbance at the filling station.

The case was submitted to the jury under a charge on circumstantial evidence, and we think the trial court ruled correctly in overruling the motion for instructed verdict.

We shall now discuss the other contentions raised by appellant's able counsel in his brief.

By Bill of Exception No. 1 appellant complains that the court failed to apply the law of principals to the facts in his charge.

At the outset, we observe that the court required the jury to find that the appellant killed the deceased by shooting him with a pistol before they could convict.

In Garver v. State, 158 Texas Cr. Rep. 585, 258 S.W. 2d 812, we had a similar question before us. In that case the accomplice testified that he and the appellant committed the burglary. Officer Ward testified that on the night of the burglary and near the burglarized premises he had seen the appellant seated in a pickup truck. There we said:

"As stated in the original opinion, the court required a finding that the accused actually entered the burglarized premises before he could be convicted.

"Had the court charged on the law of principals, it would have been more onerous on the accused than the charge that was given, because such a charge would have authorized a conviction if the jury found that the accused was keeping watch."

We think such authority is controlling here and find no error reflected by the bill.

Bill of Exception No. 5 is addressed to the failure of the .court to apply the law of circumstantial evidence to the facts in his charge to the jury.

In Beard v. State, 57 Texas Cr. Rep. 323, 123 S.W. 147, the trial court charged the jury as the appellant here contends should have been done. In reversing the conviction, we said that the charge was on the weight of the evidence and said, "It singles out one fact in the case, and instructs the jury with reference to circumstantial evidence as to that fact alone. The rule of circumstantial evidence covers all the facts in a case, and not one particular fact."

Bill of Exception No. 8 complains of jury argument. The argument was nothing more than an appeal to the jury to assess a punishment in the case that would deter others from committing like offenses.

No reversible error appearing, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

The principal complaint raised in appellant's motion for rehearing relates to our disposition of his Bill of. Exception No. 1. We disposed of this bill relating to the charge on the law of principals, upon the theory that the charge in fact required the jury to find that appellant himself fired the fatal shot.

In the Garver case, cited in support of our holding, there was evidence to sustain a finding that the defendant broke and entered the building, and also testimony from which the jury could have found that he kept watch while his companion made the entry. We held, under these facts, that Garver was in no position to complain that the jury was not so charged as to authorize his conviction under the latter theory as well as upon a finding that he personally committed the burglarious act.

Appellant points out that the rule we invoke could have no application here for the reason that there is no evidence to support a finding by the jury that appellant shot and killed the de-

ceased, and that the only theory upon which the state could have relied was that he acted as a principal with Moody Puckett, who admittedly killed the deceased.

A re-examination of the record convinces us that appellant. is correct in his contention.

No witness identified appellant as the person who fired the shot or as one of the two men present at the time of the shooting. All of the evidence points to Moody Puckett as the person who fired the shot.

Harvey Holland, a passenger in the deceased's car, testified that he talked "to the guy who shot him" and heard him say that "he shot the wrong guy"; that he had never seen appellant so far as he knew before the trial; that he saw one of the two men that were in the other car drive off, but the fellow he was talking to remained there. Also Holland identified a picture, which was shown to be that of Moody Puckett, as the person he was talking to and who said he killed the deceased and had "shot the wrong guy" and remained at the scene. He also testified that the same man asked the deceased "Why in the hell he didn't stop," and that he had a pistol in his belt after the shooting.

When appellant returned to the service station, he reported that the Negro was out there dead and that Moody had killed him.

When Deputy Sheriff Fields arrived, Moody Puckett was sitting near the body of the deceased with a .38 caliber pistol in his lap. This officer testified that Puckett said he had done the shooting.

There is ample evidence upon which the jury might have found that appellant acted as a principal with Moody Puckett in the killing. They were in the service station together. It was appellant who suggested "We'll go get him." Appellant was the owner of the pistol and of the car, and drove it in pursuit of the Negroes who had cursed the service station attendant.

The circumstances are sufficient to support a finding that he was present and was acting with Moody Puckett, but the question of whether he was present and knew that Puckett intended to kill the Negro, advised or encouraged Puckett in the murder, was not submitted to the jury.

The court's charge contained an abstract definition of the law of principals, but in no manner applied the same to the facts.

The jury was authorized by the charge to convict appellant upon a finding that he committed the murder, but the evidence is not such as would sustain such a finding.

The jury was not instructed to the effect that if Moody Puckett voluntarily killed the deceased and appellant acted with him as a principal, in one or more of the ways stated in the definition of that term, he should be convicted.

The trial court should have made application of the law of principals to the facts, the jury, under the facts here, not being warranted in convicting him unless they found that knowing Puckett's unlawful intent, he agreed to or aided or encouraged him in the commission of the offense.

And in connection with such submission, it was incumbent upon the court to charge the converse.

The following authorities cited by appellant support these conclusions: Crisp v. State, 125 Texas Cr. Rep. 603, 69 S.W. 2d 772; Barnes v. State, 145 Texas Cr. Rep. 131, 166 S.W. 2d 708; Branch's Ann. P.C., p. 346, Sec. 678.

The error in the charge requires that the conviction be set aside.

Appellant's motion for rehearing is granted, the order of affirmance set aside and the judgment is now reversed and the cause remanded.